IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

ERIC CONARD DAVIDSON, #139 503        *

     Plaintiff,        *

        v.        *        2:04-CV-532-MEF
                                (WO)

C.O.I TYRONE HURT, *et al.*,        *

     Defendants.        *

_____

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Eric Davidson ["Davidson"], an inmate proceeding *pro se,* filed this 42 U.S.C. § 1983 action on June 1, 2004  alleging that Defendants violated his constitutional rights by subjecting him to excessive force, by failing to protect him from such use of force, and by retaliating against him.  Davidson  requests trial by jury.  He also requests damages and declaratory and injunctive relief against Defendants  Commissioner Donal Campbell, Warden Arnold Holt, Assistant Warden Louis Boyd, Sergeant Cedric Specks, and Correctional Officers Tyrone Hurt, Derrick Carter, Christopher Young, Towanda Biggers, and Mark Wilson.[1]

_____

[1]These are the individuals named specifically as defendants on pages 1 and 2 of Davidson's complaint. (*See* Doc. No. 1 at pgs. 1, 2.)  The court notes that in his response to Defendants' written report, Davidson references "Defendant Sylvester Nettles," "Defendant Donnie Franklin," " Defendant Pamela Harris," and "Defendant Talley." (Doc. No. 32.)  These individuals were not listed as defendants by Davidson nor referred to as a defendant in the complaint.  They were not served with a copy of the complaint nor was an appearance entered on their behalf by counsel for the named defendants.  (*See* Doc. Nos. 23, 27.)  Davidson received a copy of the written report and was thus on notice at that time of those persons for whom an entry of appearance

In accordance with the  orders of the court, Defendants filed an answer,  special report, and supporting evidentiary material in response to the allegations contained in the complaint. The court then informed Davidson that Defendants' special report  may, at any time, be treated as a motion for summary judgment, and the court explained to Davidson the proper manner in which to respond to a motion for summary judgment.  Davidson filed a response to the  special report filed by Defendants.  This case is now pending on Defendants' motion for summary judgment.  Upon consideration of such motion, the evidentiary materials filed in support thereof, and Davidson's opposition to this motion, the court concludes that Defendants' motion for summary judgment is due to be granted in part and denied in part.

---

had been made. Further, on pages 11 and 12 of his complaint, Davidson submitted a list of names which he stated were either defendants or witnesses in his case.  It is noted that Officer Talley is not on this list but other correctional officers and medical  personnel not named  as or referred to as defendants are on the list in addition to the names of several inmates.   While Davidson references several other  individuals in the body of his complaint in addition to Nettles, Talley, Harris, and Franklin, such individuals were likewise  neither listed as defendants nor referenced in such capacity.

In light of the foregoing, the court finds that Officers Nettles, Franklin, Harris, and Talley are not properly named defendants to this cause of action and that this complaint is proceeding only against the claims made against those individuals specifically identified as defendants in Davidson's original complaint.  It is a plaintiff's responsibility to accurately identify the persons he seeks to name as defendants in order to not only put the named defendants on notice of the claims against them but also to ensure that those individuals whom a plaintiff wishes to sue have been served with the complaint.  Davidson received notice of this requirement in the court's July 27, 2004 order.  (*See* Doc. No. 12.)  Davidson did not seek to amend his complaint to state additional factual allegations or to specifically name Officers Nettles, Franklin, Harris, and/or Talley as defendants within  the time period allowed by the court. (*See* Doc. No. 12 at pg. 4, ¶4(f).)  Although Davidson was granted leave to file a motion to amend complaint on August 23, 2004, he did not file any such motion until December 2, 2004.  That motion was denied as untimely with the court noting that the motion was filed six months after the original complaint was filed and two months after Defendants filed their written report.  (*See* Doc. No. 34.)   Parties, including *pro se* litigants, are not at liberty to ignore the directives contained in the orders of the court, and Davidson has presented no compelling reason why he was unable to comply with any of the provisions contained in the various rulings and orders entered in this case.

# I. BACKGROUND

At the time he filed this complaint, Davidson was incarcerated at the Bullock Correctional Facility ["BCF"].[1]  Beginning in April 2003 and continuing until September 12, 2003, when he was transferred to the Easterling Correctional Facility, Davidson alleges that Defendant Hurt subjected him to several unjustified uses of force.  On April 6, 2003, Davidson asserts that Defendant Hurt struck him violently around his head and chest area in one of the hallways of BCF.  Later that morning, Defendant Hurt attacked Davidson again in a hallway as he was being escorted to the infirmary by Officer Carter. Davidson contends that Defendants Wilson and Young witnessed the two attacks in the hallway but failed to intervene. On May 6, 2003, Davidson contends that Defendant Hurt violently punched him on the back of his legs as he lay in bed sleeping.  Although Davidson claims that Defendant Hurt's abusive conduct continued from "April 6[th] and May 6[th] and through the rest of the year of 2003," he does not allege any other specific instances of harm by Defendant Hurt Davidson further claims in his complaint that Defendants Boyd and Specks failed to protect him from Defendant Hurt's conduct and that correctional officials subjected him to retaliation.  (Doc. No. 1.)

Defendants deny violating Davidson's constitutional rights. Defendant Hurt states that Davidson often hung towels around his bed blocking the vision of the dormitory when he

---

[1]Davidson is currently incarcerated at the Staton Correctional Facility located in Elmore, Alabama.

should not have engaged in such conduct.  When Defendnat Hurt would order Davidson to take the towels down, Davidson would tell the on-duty shift supervisor that the guard had assaulted him.  The on-duty shift supervisor would then question the inmates in Davidson's dormitory,  none of whom confirmed Davidson's description of events. Defendant Hurt further asserts that the Department of Corrections' Investigation and Intelligence (I & I ) Division investigated Davidson's allegations and found no wrongdoing.  (Doc. No. 23, Exh. 1, Doc. No. 27.)

In a statement Defendant Hurt provided in connection with an incident report dated April 6, 2003 , he stated that while conducting security rounds in Dorm #12, he observed Davidson get off his bed.  When Defendant Hurt asked Davidson why he was off his bed, Davidson replied "You got a fucking problem with it?"   Defendant Hurt then ordered Davidson to get dressed and wait for him in the cubicle. After getting dressed, Davidson went to the cubicle where he found Defendant Hurt.  When asked twice by Defendant Hurt whether he wanted to go to the shift commander's office or go back to his bed, Davidson remained silent.  He then yelled very loudly "Get your hands off of me" and repeated the phrase three times. Defendant Hurt ordered Davidson to go back to his dorm but he refused to move.  The officer repeated the order once again at which time Davidson went inside Dorm #12 and to his bed. (Doc. No. 23, Exh. 3, Incident Report Attachment - 03-488.)

Defendant Specks was the shift commander to whom Davidson reported the incidents

involving  Defendant Hurt.  He maintains that with respect to the two incidents reported to

him,  he  took  statements  from  all  witnesses  in  the  immediate  area  and  then  took  that

information and attached it to an incident report and also reported the allegations to Assistant

Warden Boyd.[2]  Defendant Specks denies Davidson's contention that he failed to prevent

future harm by Defendant Hurt inasmuch as he and other supervisors on the shift ensured

that Defendant Hurt was not scheduled to work in the area where Davidson slept in order to

minimize contact between the inmate and the officer.   (Doc. No. 23, Exh. 2, Doc. No. 27.)

     In his complaint, Davidson alleges that Officers Young and Wilson failed to intervene

during the April 6, 2003 attacks. In  response to Davidson's allegations, Defendant Wilson

states that he overheard Defendant Hurt telling Davidson to get back to his dorm but did not

see anything because he was in a different dorm.  He states that he did not hear anything

further between Davidson and Defendant Hurt.   Defendant Young denies any knowledge

of  the  incident  which  occurred  on  April  6,  2003. He  states  that  on  the  date  and  time  in

question he was at his assigned post where he remained during his entire shift and was never

on the hallway where the alleged assault occurred. Defendant Biggers states that she has no

knowledge  of  any  harassment  or  abuse  directed  towards  Davidson  as  alleged  in  his

---

[2]The first incident about which Davidson complained occurred on April 6, 2003 around 4:00 a.m.
According to the incident report, Davidson alleged that Defendant Hurt grabbed him in the hallway around his
chest and shoulder area.  Plaintiff was  escorted to the infirmary after this incident for examination. The second
incident occurred  on May 5, 2003 close to midnight.  Davidson complained that Defendant Hurt approached
his bed, grabbed him by the leg, and ordered him to take down  towels around his bed.  After Davidson reported
this incident, Officer Charles escorted him  to the infirmary for a body chart.  (Doc.  No. 23, Exh. 3, Incident
Report Attachments.)

complaint.  In her statement provided for the institutional  incident report regarding Davidson's claim that Defendant Hurt assaulted him around 4:00 a.m. on April 6, 2003, Defendant Biggers stated that she heard Defendant Hurt loudly order Davidson to get back in his dorm.  She observed Davidson raise his arm across his face and state "get off me."  She heard the two men arguing and heard something fall to the floor.  (Doc. No. 18, Doc. No. 23, Exh. 3, Attached Incident Report - 03-488, Exhs. 4-6.)

Davidson received two body charts with regard to his allegations of assault at the hands of Defendant Hurt.  Medical records show that a nurse examined Davidson on April 7, 2003 [3]  at  4:20 a.m. for his complaint that he had been assaulted in the hallway by Officer Hurt who grabbed him and struck him in the chest area. Davidson also stated that the guard had broken his glasses.  On examination, medical personnel found Davidson alert and oriented x3.  He had reddened areas around his neck and a large reddened area covering the left side of his chest which Davidson stated was painful to the touch.  Following this examination, the nurse released Davidson to DOC custody. Medical personnel examined Davidson again on May 5, 2003 at 11:58 p.m. for his complaint that he was asleep on his bed when an officer hit him on his left leg.  The attending nurse noted no distress, swelling, or bruising and discharged Davidson back to his dorm with instructions that he return if he had any problems. (Doc. No. 3, Incident Report Attachments - Medical Records.)

---

[3]It is unclear whether Davidson was not seen until April 7, 2003 with regard to the April 6 event or if the date reflected on the medical record was an inadvertent misprint.

## II.  STANDARD OF REVIEW

In order to survive Defendants' properly supported motion for summary judgment, Davidson is required to produce some evidence supporting his constitutional claims.  *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986).  He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  A plaintiff's conclusory allegations do not provide adequate evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, entry of summary judgment is appropriate.  *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).  Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact.  *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

## III.  DISCUSSION

*A.  Absolute Immunity*

To the extent Davidson  sues Defendants in their official capacities, they are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities."  *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that Defendants are state officials entitled to Eleventh Amendment immunity when sued in their official capacities.  Thus, Defendants are entitled to absolute immunity from claims asserted by Davidson against them in their official capacities.

B.  *Individual Capacity Claims*

   i.  *The Excessive Force Claim*

   Defendants argues that they are entitled to qualified immunity on Davidson's excessive force claim.  The law of this Circuit, however,  precludes a defense of qualified immunity in cases alleging excessive force in violation of the Eighth Amendment because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation.  *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), citing *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986). A qualified immunity defense is, therefore, not available when a plaintiff properly pleads the use of excessive force.  *Id.*  Davidson  has properly pled a claim of excessive force.  Thus, the only question in this case is whether he has alleged facts sufficient to survive a motion for summary judgment.  *Id.*   Accordingly, this court will consider whether Davidson's allegation that Defendants used excessive force against him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm."  *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).  To determine if an application of force was applied

9

maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996).   From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301.

In *Hudson*, the Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injuries.   *Id*. 503 U.S. at 9; *but see Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").   An excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327.)  In *Hudson*, the Court did not define "*de minimis* use of force" but suggested that the degree of injury received is at least relevant to determining whether more than *de minimis* force was used.  *Id.* at 10.

Davidson contends that Defendant Hurt's uses of force were excessive, unprovoked,

and unjustified. He argues that Defendants Wilson, Biggers, and Young failed to intervene and protect him from the  assaults. (Doc. No. 32.)  Defendant Hurt denies using any force on Davidson, and Defendants Wilson, Biggers, and Young deny seeing Defendant Hurt abuse Davidson.  (Doc. No. 18, Doc. No. 23, Exhs. 4-6, Doc. No. 27.)

It is questionable whether Davidson suffered anything more than minor injuries as a result of Officer Hurt's alleged conduct, but the injuries he received are only one factor for consideration.  While the absence of serious injury is relevant to an Eighth Amendment inquiry, it does not end this inquiry.  *Hudson*, 503 U.S. at 7; *Skrtich*, 280 F.3d at 1304 n.8, citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986); *see also Smith v. Mensinger*, 293 F.3d 641, 649 (3rd Cir. 2002) (considering the *de minimis* nature of injuries is an issue of fact to be resolved by the fact finder based on the totality of the evidence); *Brooks v. Kyler*, 204 F.3d 102, 103 (3rd Cir. 2000) (holding that there is "no fixed minimum quantity of injury that a prisoner must prove that he suffered" in order to state an excessive force claim).  The court must also consider the need for the application of force, the amount of force exerted, the threat reasonably perceived by the official and any efforts to temper the severity of the forceful response.  *Skrtich*, 280 F.3d at 1305 n.9.

As indicated, Davidson assets that Defendant Hurt instigated a use of physical force against him on at least two separate occasions for no apparent reason and while he posed no threat, and that Defendants Wilson, Biggers, and Young observed the altercations but failed

11

to intervene to stop them.   (Doc. No. 32.)   Defendant Hurt, however, denies Davidson's allegations regarding any use of excessive force and indicates that he never made any physical contact with Davidson.  Defendants Young, Biggers, and Wilson deny ever seeing Defendant Hurt inflict any injury or force on Davidson.  (Doc. No. 18; Doc. No. 23, Exhs. 1, 4-6.)

When viewing the facts in the light most favorable to Davidson, this court concludes that Defendants Hurt, Young, Biggers, and Wilson are not entitled to qualified immunity as Davidson  alleges facts sufficient to survive a motion for summary judgment. *See Skrtich*, 280 F.3d at 1301.  Consequently, the motion for summary judgment with respect to the excessive force claim against Defendants Hurt, Biggers, Wilson, and Young is due to be denied.

### ii.  Defendants   Campbell, Holt, Boyd and Specks

It is undisputed that Warden Holt, Commissioner Campbell, Assistant Warden Boyd, and Sgt. Specks were not involved in the use of force about which Davidson complains.  The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by a defendant and the alleged constitutional deprivation. *Jones v. Preuit & Mauldin*, 851 F.2d 1321 (11th Cir. 1988). Davidson has come forward with no evidence demonstrating existence of the requisite causal connection with respect to his claims of excessive force against Defendants Holt, Campbell, Boyd and Specks.

To the extent Davidson maintains that Defendants Holt, Campbell, Boyd, and Specks are liable for the actions of a correctional officer due to their supervisory roles, Davidson's claims must likewise fail. The law is well settled that a defendant cannot be held liable in an action brought pursuant to 42 U.S.C. § 1983 under the theory of *respondeat superior* or on the basis of vicarious liability. *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *Brown v.* Crawford, 906 F.2d 667, 671 (11th Cir. 1990); *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). In light of the foregoing, the court concludes that Defendants Holt, Campbell, Boyd, and Speck's motion for summary judgment with respect to Davidson's excessive force and *respondeat superior* claims is due to be granted.

*iii. The Retaliation Claim*

In his complaint Davidson alleges that he was subjected to retaliation by correctional officers who either physically harmed him or threatened him with harm. (Doc. No. 1.) In his opposition, Davidson conclusorily asserts that Defendant Hurt subjected him to retaliation. (Doc. No. 32.)

To present a retaliation claim cognizable under § 1983, a prisoner must demonstrate that (i) he engaged in a constitutionally protected activity, (ii) he suffered adverse treatment simultaneously with or subsequent to such activity, and (iii) a causal connection existed between the protected activity and the adverse action. *Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600-601 (11th Cir. 1986); *Farrow v. West*, 320 F.3d 1235, 1248-49 (11th Cir. 2003); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2nd Cir. 2004); *Morales v. Mackalm*, 278 F.3d

13

126, 131 (2nd Cir. 2002); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Moreover, a prisoner must allege more than his personal belief that he is the victim of

retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Conclusory allegations

of retaliation are insufficient. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995); *Bennett

v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (because prisoner retaliation claims are prone

to abuse, "we are careful to require non-conclusory allegations.").

The court has carefully reviewed Davidson's assertion of retaliation.  At best, the

retaliation claim is purely conclusory and self-serving. The court, therefore, concludes that

Davidson's retaliation claim is insufficient to support a claim for relief under 42 U.S.C. §

1983.  *See Adams v. Rice*, 40 F.3d 72, 74-75 (4th Cir. 1994);  *Alfaro Motors, Inc. v. Ward*,

814 F.2d 883, 887 (2nd Cir.1987) ("allegations which are nothing more than broad, simple,

conclusory statements are insufficient to state a claim under § 1983")

*iv.  The Failure to Protect Claim*

Davidson alleges that Defendants Boyd and Specks were aware of the risk Defendant

Hurt posed to him but failed to take steps to abate the known risk.  He maintains that they

failed to implement a change in security which allowed Defendant Hurt the opportunity to

engage in continued abusive conduct towards him until he (Davidson) was transferred from

BCF.  (Doc. Nos. 1, 32.)

Correctional officials may be held liable under the Constitution for acting with

"deliberate indifference" to an inmate's safety when the official knows that the inmate faces

"a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, . . . and [that] the official does not respond[] reasonably to the risk'...." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (*en banc*), *quoting Farmer*, 511 U.S. at 844. "The known risk of injury must be a 'strong likelihood, rather than a mere possibility' before a guard's failure to act constitute deliberate indifference." *Brown*, 894 F.2d at 1537 (citations omitted); *see also  Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997) (unless a prison official actually makes the  inference that a substantial risk of serious harm exists, he does not act with deliberate indifference even where his actions violate prison regulations or can be described as stupid or lazy). An inmate "normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *McGill v. Duckworth,* 944 F.2d 344, 349 (7th Cir. 1991); *overruled in part on other grounds by Farmer*, 511 U.S. 825. An "official's failure to alleviate a significant risk that he should have perceived but did not," does not constitute deliberate indifference. *Farmer,* 511 U.S. at 838.

Based on the foregoing, to survive summary judgment on his failure to protect  claim, Davidson must present "sufficient evidence of (1) a substantial risk of serious harm; (2) the

defendants' deliberate indifference to that risk; and (3) causation."  *Hale*, 50 F.3d at 1582.

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'"  *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference."  *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

The evidentiary materials submitted by Defendants Boyd and Speck refute Davidson's conclusory allegation that they acted with deliberate indifference to his safety.  Defendants Boyd and Specks investigated Davidson's allegations of abuse by Defendant Hurt. Specifically, with regard to the April 2003 incident, Defendant Specks listened to Davidson's version of events and then ordered that he be escorted to the infirmary for a body chart. Defendant Specks notified Defendant Boyd of the incident and determined that no further action would be taken at that time pending further investigation. After Sgt. Specks spoke with Davidson in May 2003 regarding his contention that Officer Hurt grabbed his leg while he was on his bed, he questioned several inmates who slept around Davidson's area as well as another correctional officer who was in the dorm at the time the incident occurred. Defendant Specks again directed that Davidson be escorted to the infirmary to receive a body chart and re-assigned Officer Hurt to another dormitory.  (Doc. No. 23, Exh. 2, 3 and Incident Reports - 03-488 & 03-625.)

The evidence before this court establishes that Defendants Boyd and Specks acted in a reasonable manner when addressing the security concerns at BCF.  Davidson has  failed to come forth with any evidence that prison officials' conduct was not reasonable, and that they were in fact deliberately indifferent to his safety and well-being.  Davidson's assertion that he notified correctional officials of Defendant Hurt's "abusive habits" and/or "negative behavior" is not tantamount to alerting them that the correctional officer posed a risk to his safety.  Additionally, although Davidson alleges that Defendants Boyd and Specks allowed Defendant  Hurt to continue his harassment and/or abuse of him until he was transferred from BCF, such contention is conclusory and fails to specify any instances of specific misconduct.  Further, it is undisputed that Officer Hurt was assigned as a rover to another dorm following the May 6, 2003 incident with Davidson. Because prison officials responded reasonably to the risk of which they knew regarding the harm alleged by Davidson, the undersigned concludes that he has failed to demonstrate  liability under the Cruel and Unusual Punishments Clause. *See Farmer*, 511 U.S. at 844 ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted"); *see also Hamilton v. Leavy*, 117 F.3d 742, 748 (3rd  Cir. 1997) ("If a prison official responds reasonably to a risk to an inmate's safety, he or she cannot be found to have acted with a sufficiently culpable state of mind.").

In the instant case, there is no evidence that either Defendant Boyd or Defendant

Specks knowingly disregarded an obvious threat or acted or failed to act in a manner precisely for the purpose of placing Davidson in harm's way.   Davidson  has, therefore, failed to establish the requisite element of subjective awareness on the part of Defendants. *Carter*, 352 F.3d at 1350.   Since the record fails to demonstrate any deliberate indifference or reckless disregard by Defendants Boyd or Specks with respect to Davidson's failure to protect claim, summary judgment is due to be granted in their favor. *See Celotex Corp*. 477 U.S. at 322.

  *v. Failure to Name Proper Defendant*

  Davidson named Officer Derrick Carter as a defendant. In a corrected special report filed by Defendants on September 21, 2004, counsel for Defendants indicated that BCF officials erroneously accepted service of the complaint for "Derrick Carter" inasmuch as there is no individual at BCF by this name and no individual by that name could be identified as an employee at BCF. (*See* Doc. No. 27.)

    During the proceedings in this case, the court advised Davidson that it is his responsibility to provide the court with a correct address for service and  informed him that he must monitor the case to ensure that all defendants he wished to sue had been served. (Doc. No. 12.) Despite Defendants' September 21, 2004 pleading which put the parties on notice  that no officer could be identified at BCF with the name "Derrick Carter," the docket reflects that no pleading was filed in response to this information nor was a  timely motion to amend  filed for purposes of identifying the  "Officer Carter" against whom Davidson

18

wished to file suit.[4] Accordingly, the court concludes that Davidson's claims against "Derrick Carter" are due to be dismissed and this individual is due to be dismissed as a party to the complaint.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants' motion for summary judgment on Plaintiff's retaliation, *respondeat superior*, and failure to protect claims (Doc. No. 23, 27), be GRANTED and these claims against  Defendants be DISMISSED with prejudice;

2.  Defendants Hurt, Biggers, Young, and Wilson's  motion for summary judgment with respect to Plaintiff's excessive force claim (Doc. No. 23, 27) be DENIED;

3.  Plaintiff's complaint against Defendant Derrick Carter be DISMISSED and this defendant be DISMISSED as a party to the complaint;

4.  Defendants Campbell, Holt, Boyd, and Specks be DISMISSED as parties to this cause of action; and

5.  Plaintiff's  excessive force claim against Defendants Hurt, Wilson, Young, and Biggers be set for trial.

It is further

---

[4]Although the court denied as untimely Davidson's motion to amend complaint where he sought to name additional defendants and claims to this cause of action, he was free to file another civil action if he wished to do so.

19

ORDERED that the parties shall file any objections to this Recommendation on or before **June 19, 2006**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 8th day of June 2006.

**/s/ Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE